UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                              Case No.: 13-20853-PGH

TLO, LLC,                                           Chapter 11

          Debtor.
_____/

TRACERS INFORMATION
SPECIALISTS, INC.,

          Plaintiff,                           Case No.: _____

v.

TLO, LLC,

          Defendant,
_____/

## COMPLAINT

      Tracers Information Specialists, Inc. ("Tracers"), by and through undersigned counsel, files this complaint against TLO, LLC ("TLO") (the "Complaint"), and in support thereof, states as follows:

## JURISDICTION AND VENUE

      1.      This adversary proceeding is brought in connection with TLO's above-referenced Chapter 11 bankruptcy case filed under Title 11, now pending before the Court.  This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A).

      2.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. § 1408 and 1409.

      3.      This is an adversary proceeding for declaratory relief pursuant to 11 U.S.C. § 541 and 105(a).

## BACKGROUND AND GENERAL ALLEGATIONS

4.      Tracers is a foreign for-profit corporation authorized to do business in the State of Florida with a principal place of business located at 15470 Flight Path Drive, Brooksville, Florida.

5.      Tracers is in the business of compiling current information regarding people and companies through various public and non-public sources.  Tracers offers access to, and use of, the data to its customers.

6.      TLO is a Florida limited liability company with a principal place of business located at 4530 Conference Way South, Boca Raton, Florida.

7.      TLO describes its business in its *Chapter 11 Case Management Summary* as a "provider of data solutions specializing in custom, scalable investigative and risk management tools."   ECF No. 23.

8.      Tracers transferred data to TLO in two forms that are relevant to the Complaint.

9.      From September 2009 through December 2012, Tracers provided TLO certain data on disks (the "Bulk Data").

10.      TLO agreed to provide payment to Tracers for the use of the Bulk Data.

11.      TLO has never paid Tracers for the use of the Bulk Data.

12.      From September 2009 through May 17, 2013, Tracers provided the Debtor with data through secure file transfers (the "File Transfer Data") (the Bulk Data together with the File Transfer Data, the "Data").

13.      TLO agreed to provide payment to Tracers for the use of the File Transfer Data.

14.      TLO has not paid Tracers for the use of the File Transfer Data since February 2013.

15.     Tracers provided TLO the Data to use for commercial and other purposes.

16.     TLO used the Data for commercial and other purposes.

17.     Tracers is the sole owner of the Data.

18.     Tracers did not transfer any ownership interest in the Data to TLO.

19.     TLO does not have any ownership interest in the Data.

20.     TLO does not have a claim to any ownership interest in the Data.

21.     Tracers and TLO attempted to negotiate a license agreement for TLO's use of the Data, and other data; however, due in part to the Debtor's corporate representatives changing, the parties never executed a license agreement.

22.     On February 8, 2013, TLO sent an email to Tracers (the "February 8, 2013 Email") stating *inter alia* that "[w]e would like to come to an agreement on the terms and prices for the data TLO would like to license from Tracers as soon as possible."  A true and correct copy of the February 8, 2013 Email is attached hereto and incorporated herein as **EXHIBIT A**.

23.     The February 8, 2013 Email included a proposed data license agreement for Tracers to review (the "Proposed Agreement").

24.     Tracers and TLO did not execute the Proposed Agreement.

25.     TLO did not list any license agreement between TLO and the Tracers with respect to the Data in its schedules filed in the above-referenced bankruptcy case.

26.     By February 13, 2013, Tracers did not believe that it would be able to reach an agreement with TLO with respect to TLO's use of the Data and payment for such use.

27.     Counsel for Tracers sent TLO a letter dated February 13, 2013 (the "February 13, 2013 Letter") that provided *inter alia* "Tracers is no longer willing to allow TLO to use data that

has been provided to TLO by Tracers for any purpose." A true and correct copy of the February

13, 2013 Letter is attached hereto and incorporated herein as **EXHIBIT B**.

28.     The February 13, 2013 Letter further provided that:

TLO shall also return or destroy all copies of any of Tracers' data on any storage media that were delivered to TLO by Tracers, and remove Tracers' data from any of  TLO's system files, including but not limited to any master files containing Tracers' data, either in its original form or in an extracted form.

29.     On February 13, 2013, Tracers sent TLO an email (the "<u>February 13, 2013</u>

<u>Email</u>") that stated *inter alia* "[a]s a matter of policy, we don't transfer ownership of data to

licensees –not for any price, and certainly not for the 'buy-one-get-30-free' pricing contained in

your proposal." A true and correct copy of the February 13, 2013 Email is attached hereto and

incorporated herein as **EXHIBIT C**.

30.     The February 13, 2013 Email further provided *inter alia*

We understand that the removal of our data from your systems will be inconvenient, but we're going to have to insist that you do it, anyway.  Naturally, all the appropriate "lawyer letters" and whatnot are on their way, but it's our practice not to pretend to negotiate when we have no intention of continuing a relationship, and we know you'll want to get started replacing the data (or as much of it as is possible to replace) as quickly as you can.

31.     TLO sent Tracers a letter dated February 22, 2013 (the "<u>February 22, 2013</u>

<u>Letter</u>") indicating that while it received the "letters of February 13, 2013 and February 21, 2013,

demanding TLO's cessation of use of data provided by [Tracers][,]" due to alleged continuing

negotiations "TLO will be taking no actions until the parties either come to agreement or exhaust

negotiations." A true and correct copy of the February 22, 2013 Letter is attached hereto and

incorporated herein as **EXHIBIT D**.

32.     TLO sent Tracers a letter dated March 4, 2013 (the "<u>March 4, 2013 Letter</u>") that

purported to "formalize the understanding between the parties" and provided *inter alia* "the

parties agree to continue negotiations in good faith for the licensure of certain data sets by Tracers to TLO for use in TLO's commercial products."  A copy of the March 4, 2013 Letter is attached hereto as **EXHIBIT E**.

33.    The March 4, 2013 Letter further stated *inter alia*:

[i]f, upon March 16, 2013, the parties have been unable to agree upon acceptable terms and have not entered into a written agreement acceptable to both parties, then TLO will take commercially reasonable efforts to cease using Tracers' data, destroy Tracers' data, and certify such actions to Tracers upon completion of the cessation and destruction of Tracers' data.

34.    The parties were neither able to reach acceptable terms, nor enter into an acceptable written agreement by March 16, 2013.

35.    As of the date of filing the Complaint, the parties have not reached terms of an agreement acceptable to both parties.

36.    TLO has not certified to Tracers that it has completed the cessation and destruction of the Data.

37.    Upon information and belief, TLO did not cease to use the Data and has not destroyed the Data.

38.    Upon information and belief, TLO has and continues to impermissibly use the Data for its own purposes, commercial and otherwise.

39.    TLO filed a voluntary petition for Chapter 11 bankruptcy on May 9, 2013.

## COUNT I - REQUEST FOR DECLARATORY JUDGMENT TO DETERMINE AN INTEREST IN PROPERTY

40.    Tracers realleges and readopts the allegations set forth in paragraphs 1 through 39 as fully set forth herein.

41.    Pursuant to § 541(a), property of the estate is comprised of, except as otherwise provided, "all legal or equitable interests of the debtor in property as of the commencement of

the case." 11 U.S.C.A. § 541(a). "A bankruptcy estate cannot succeed to a greater interest in property than the debtor held prior to bankruptcy." *In re Lone Star Pub Operations, LLC*, 465 B.R. 212, 216 (Bankr. D. Kan. 2012).

42.     TLO has no legal or equitable interests in the Data.

43.     The Data is not property of TLO's bankruptcy estate.

44.     Therefore, Tracers is entitled to a determination that: TLO does not have any valid ownership interest in the Data, the Data does not constitute property of TLO's bankruptcy estate, and that Tracers is the owner of the Data.

**WHEREFORE**, the Plaintiff, Tracers Information Specialists, Inc., respectfully requests that the Court enter an order:

i.      Determining that TLO does not have any valid ownership interest in the Data;

ii.     Determining that the Data does not constitute property of TLO's bankruptcy estate;

iii.    Determining that Tracers is the owner of the Data;

iv.     Requiring TLO to return the Data to Tracers;

v.      Requiring TLO to remove the Data from its systems and destroy any copies of the Data;

vi.     Requiring TLO to provide an independent third party access to confirm that TLO removed the Data from its systems and destroyed any copies of the Data; and

vii.    Granting Tracers any other relief that the Court deems just and equitable.

Dated: October 30, 2013

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully submitted,

**SHRAIBERG, FERRARA & LANDAU, P.A.**
Attorneys for Tracers Information Specialists, Inc.
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047

By: /s/ Philip J. Landau
      Philip J. Landau, Esq.
      Fla. Bar. No. 0504017
      Bernice C. Lee, Esq.
      Florida Bar No. 0073535

# Exhibit
# A

-------- Original Message --------
**Subject:** Data License Agreement
    **Date:** Fri, 8 Feb 2013 19:04:54 +0000
    **From:** Paul Fichtman <paul@tlo.com>
      **To:** Terry Kilburn <terry@tracersinfo.com>, Nancy Kilburn-Tracers <nancy@tracersinfo.com>
      **CC:** Wink Price <wink@tlo.com>, "Ken Hunter, CEO" <Ken@TLO.com>, Marco Piovesan
        <marco@tlo.com>

Dear Nan & Terry,

I hope all is well with you.

We would like to come to an agreement on the terms and prices for the data TLO would like to license from Tracers as soon as possible. To that end, I have attached a draft Data License Agreement based on the e-mail proposal we made and your conversations with Wink. Would you please review the Agreement, send us any edits or comments you have and/or call Wink or myself to schedule a meeting at your earliest convenience.

As always, feel free to call Wink or me at any time.

Sincerely,
Paul



**Paul Fichtman**
*4530 Conference Way South*
*Boca Raton, FL 33431*

***Phone: (215) 527-1131***
***email: paul@tlo.com***

# Exhibit
# B

# THE HOGAN LAW FIRM®

| BROOKSVILLE OFFICE | SPRING HILL OFFICE | MAILING ADDRESS |
|---|---|---|
| PH 352.799.8423 | PH 352.686.0334 | Post Office Box 485 |
| Fx 352.799.8294 | Fx 352.686.1633 | Brooksville, FL 34605 |

*We mean business*℠

February 13, 2013

Derek A. Dubner, Esq.
4530 Conference Way South
Boca Raton, FL 33431

By Facsimile
By Federal Express
By Email

Re: Demand for Cessation of Use

Dear Mr. Dubner:

This Firm has the pleasure of representing Tracers Information Specialists, Inc., ("Tracers") and serves as corporate counsel to same. This letter is to notify you that Tracers is no longer willing to allow TLO to use data that has been provided to TLO by Tracers for any purpose. Accordingly, demand is hereby made for TLO to cease utilizing Tracers' data immediately in any manner, including for use in any commercial product currently being offered by TLO.

In addition to the cessation of the use of Tracer's data in TLO's products, TLO shall immediately delete any and all copies of any data provided to TLO by Tracers that is present in TLO's computer systems. TLO shall also return or destroy all copies of any of Tracers' data on any storage media that were delivered to TLO by Tracers, and remove Tracers' data from any of TLO's system files, including but not limited to any master files containing Tracers' data, either in its original form or in an extracted form. Essentially, TLO is to undertake a complete and unequivocal purge of any and all data provided to TLO by Tracers. Once these actions have been completed, TLO should either permit Tracers to conduct a complete audit of TLO's system or engage an appropriate third party certification company to provide assurances to Tracers that the data described herein has been completely removed from TLO's possession.

Should TLO fail to immediately terminate the use or dissemination of Tracers' data or fail to purge its computer systems of same within ten (10) days of the date of this correspondence, this issue will be dealt with through the exercise of our right to bring suit for damages and injunctive relief. Any such exercise of our rights will include further claims which Tracers may rightfully bring against TLO.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,

Thomas S. Hogan, Jr.

TSH/maf
cc:    Tracers Information Specialists, Inc.
       Richard Salazar, Esq., Fowler White Boggs

{00381343}

# Exhibit
# C

**Shawna Morales**

| | |
|---|---|
| **From:** | Nancy Kilburn <nancy@tracersinfo.com> |
| **Sent:** | Wednesday, February 13, 2013 5:07 PM |
| **To:** | wink@tlo.com; paul@tlo.com; ken@tlo.com; gary@tlo.com; Terry Kilburn; Matthew A. Foreman; Salazar, Richard |
| **Subject:** | Data Licensing |

Wink and Paul,

Thank you for sending us the terms under which you'd be willing to agree to license our data.  We actually have our own standard licensing agreements that have served us well over the years.  For the sake of clarity, they typically contain the names we use to identify the data we license, as well as terms, conditions and use restrictions that we apply to each data set. We find it keeps things simpler if our contracts don't contain headings under which all similar data sets ("email," for instance) are lumped together, and pricing is always established for each data set individually.

Data identification issues are probably not particularly relevant at this point, however, since it has become exceedingly clear that you're looking for the kind of bargain that we have no desire to make.  As a matter of policy, we don't transfer ownership of data to licensees -- not for any price, and certainly not for the "buy-one-get-30-free" pricing contained in your proposal. I'm not aware of any data provider who enters into license-to-own arrangements, but perhaps the exchange of data is freer in the inner circle of the credit reporting industry than it is in ours.  If so, that's an option you might want to start investigating.

Because I think there may some confusion on your part about how TLO came to use so much of our data, and that your confusion about the nature of our relationship may have caused you to make decisions that you probably wouldn't have made if you had a more complete understanding of how all the pieces fit together.  I know that we've told you that Tracers provided data (among other things) to TLO on the strength of Hank's word regarding a deal between our companies, the terms of which we all agreed to in principle long before ink was put on paper.  As a result, TLO enjoyed access to all of Tracers' data, but that access was by no means unfettered, unconditional or free.

Now that the deal upon which TLO's use of our data was predicated is dead, it really doesn't make sense for us to continue to supply you with bulk data.  We are willing to continue to supply you with gateway data at competitive prices once you've signed our standard subscriber application, confidentiality, and sales agency agreements, which we'll be  happy to provide to you.

We understand that the removal of our data from your systems will be inconvenient, but we're going to have to insist that you do it, anyway.  Naturally, all the appropriate "lawyer letters" and whatnot are on their way, but it's our practice not to pretend to negotiate when we have no intention of continuing a relationship, and we know you'll want to get started replacing the data (or as much of it as is possible to replace) as quickly as you can.

Please feel free to contact me if anything about this message or the ones to follow is unclear to you.

Sincerely,

Nancy Kilburn

# Exhibit D



4530 Conference Way S.
Boca Raton, FL 33431

**(561) 988-4200**

February 22, 2013

**[Sent Via Overnight Courier and E-mail Transmission]**

Thomas S. Hogan, Esq.
Hogan Law Firm
20 S. Broad Street
Brooksville, FL 34601-2829

Re:    Demand for Cessation of Use

Dear Mr. Hogan:

We are in receipt of your letters of February 13, 2013 and February 21, 2013, demanding TLO's cessation of use of data provided by Tracers Information Specialists, Inc. ("Tracers"). We are confused by your February 21st letter as Ken Hunter of TLO and Terry and Nancy Kilburn of Tracers are engaging in ongoing discussions regarding the use of data and a future, ongoing relationship. Thus, TLO will be taking no actions until the parties either come to agreement or exhaust negotiations.

Sincerely,


Derek A. Dubner

# Exhibit
# E



4530 Conference Way S.
Boca Raton, FL 33431
(561) 988-4200

March 4, 2013

**[Sent E-mail Transmission]**

Terry Kilburn
Tracers Information Specialists, Inc.
15470 Flight Path Drive
Brooksville, Florida 34604

Re:    Agreement for Extension of Time

Dear Terry:

This letter agreement ("Agreement") is to formalize the understanding between the parties, TLO, LLC ("TLO") and Tracers Information Specialists, Inc. ("Tracers"). In the interest of forging a long-term, mutually-beneficial relationship, the parties agree to continue negotiations in good faith for the licensure of certain data sets by Tracers to TLO for use in TLO's commercial products. Such negotiations shall be ongoing until the parties come to agreement on terms and conditions acceptable to both parties, but in no event later than March 16, 2013.

If, upon March 16, 2013, the parties have been unable to agree upon acceptable terms and have not entered into a written agreement acceptable to both parties, then TLO will take commercially reasonable efforts to cease using Tracers' data, destroy Tracers' data, and certify such actions to Tracers upon completion of the cessation and destruction of Tracers' data.

We look forward to Carly Asher's and Wally Abrams's visit to your offices tomorrow and to significant progress being made towards successful closure of these negotiations. If the foregoing satisfactorily summarizes our agreement, kindly execute below and return to my attention via email.

Very truly yours,

Kenneth J. Hunter

ACKNOWLEDGED AND AGREED:

Tracers Information Specialists, Inc.

By:
Name: _Terry Kilburn_
Title: _COO_
Date: _3-4-13_